UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARPENTERS' DISTRICT COUNCIL OF GREATER ST. LOUIS and VICINITY, et al., </br></br>Plaintiffs, </br></br>v. </br></br>KRAFT & ASSOCIATES CO., </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) )   No. 4:11-CV-75 CAS |

**MEMORANDUM AND ORDER**

This closed matter was brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.  It is currently before the Court on plaintiffs' Motion For a Creditor's Bill in Equity and to Pierce the Corporate Veil.  Plaintiffs are several ERISA employee benefit plans, the trustees and fiduciaries of those plans, and a union.  Plaintiffs obtained a default judgment in this action against defendant Kraft & Associates Co. ("Kraft") for unpaid contributions to the plans.  Plaintiffs now seek to satisfy the remainder of their judgment against Kraft from assets of its alleged alter ego, M.K. Contracting, L.L.C..

For the following reasons, plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil will be denied.

**Procedural History**

On January 11, 2011, plaintiffs filed suit against Kraft in order to collect delinquent contributions, liquidated damages, interest, attorneys' fees, and costs owed pursuant to collective bargaining agreements and under the terms of ERISA, 29 U.S.C. § 1132.  On May 18, 2011, this Court entered a default judgment against Kraft in the amount of $37,790.75 (Doc. 15).  Plaintiffs

have attempted to collect the judgment by garnishing Kraft's bank account, but the garnishment interrogatories show the account has been closed and plaintiffs have been unable to collect all of the judgment. Plaintiffs then moved for a Creditor's Bill in Equity and to Pierce the Corporate Veil of Kraft in order to satisfy the judgment against its alleged alter ego, M.K. Contracting, L.L.C.

**Facts**

Kraft is a Missouri corporation that was in the business of performing structural concrete work. It was owned solely by Marvin Kraft. Kraft stopped doing business in February 2011. Matthew Kraft and his brother Michael Kraft are sons of Marvin Kraft. Matthew and Michael Kraft were officers and employees of Kraft but had no ownership interest in the company.

On April 20, 2011, Matthew and Michael Kraft formed M.K. Contracting, L.L.C. and are its sole owners. M.K. Contracting, L.L.C. performs structural concrete work similar to that previously performed by Kraft  The employees of M.K. Contracting, L.L.C. are Matthew and Michael Kraft, and Robert Stafford, who previously worked for Kraft. M.K. Contracting, L.L.C. at one time employed Ronald Walters, who had previously worked for Kraft  M.K. Contracting, L.L.C. has performed structural concrete work for two previous customers of Kraft. Marvin Kraft is not an owner, officer or employee of M.K. Contracting, L.L.C.

M.K. Contracting, L.L.C. has a corporate bank account at Concord Bank, which is a different bank than was used by Kraft for its corporate account. M.K. Contracting, L.L.C. does not own any tools or equipment that were formerly used or owned by Kraft. M.K. Contracting, L.L.C.'s business address is 15 Larkin Lane, St. Louis, Missouri 63128, while Kraft's business address was 9738 Gravois Road, St. Louis, Missouri 63123.

Matthew Kraft testified that Kraft owns equipment which is still on its property but is "tied up in foreclosure" and being held "under lock and key" by a bank. He testified that Kraft owes

2

money to the bank for a line of credit, and the bank has a security interest in all of Kraft's assets. Matthew Kraft also testified that while Kraft has accounts receivable from at least two customers, it owes money to the Internal Revenue Service, which has filed liens on its assets, and to the State of Missouri.

When asked why he started M.K. Contracting, L.L.C., Matthew Kraft stated, "Because Kraft and Associates was indebted too much everywhere, the IRS, carpenters, laborers, and I just decided to start my own company. I mean, it's either that, or look for a job, or collect unemployment." Kraft Dep. at 10.

**Discussion**

This matter is governed by ERISA, 29 U.S.C. §§ 1132(a)(3)(ii) and 1145, and the LMRA, 29 U.S.C. § 185(a). Jurisdiction and venue are proper in this Court.

Under the LMRA, one business entity is the alter ego of another, and therefore is liable for its obligations, if the two are substantially identical in terms of ownership, management, supervision, business purpose, operations, customers, equipment, facilities and employees. See, e.g., Woodline Motor Freight, Inc. v. N.L.R.B., 843 F.2d 285, 288-89 (8th Cir. 1988). Not all of the outlined factors need be identical. Under ERISA, one business entity is the alter ego of another if the two entities exist independently in form only, and those separate forms are used as a subterfuge to defraud, to justify a wrong, or to mislead or discourage pursuit of legal action. See, e.g., Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997).

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993) (citation omitted). The Eighth

3

Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." Id. The creditor's bill in equity is a long-recognized but infrequently used tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989).

Prerequisites to the issuance of a creditor's bill are the "existence of a judgment, the issuance of an execution against assets of the judgment debtor and a nulla bona return thereon." Id. at 925. The fact that a corporation's alleged alter ego was not itself either a judgment debtor or a party in the original action is irrelevant. H.H. Robertson Co., 994 F.3d at 478. Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained. Fleming Cos., Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997). "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)).

A creditor's bill in equity under Missouri law "enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" H.H. Robertson Co., 994 F.2d at 477 (quoting Shockley, 771 S.W.2d at 925). The Missouri alter ego standard applies to such claims. Id.; see also Mobius Management Sys., Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186, 189 (Mo. Ct. App. 2005).

To pierce the corporate veil under Missouri law and recover from the assets of a corporation's alter ego, three requirements must be met: (1) control, (2) breach of duty, and (3)

4

proximate cause. Mobius Mgmt., 175 S.W.3d at 188-89. A creditor must show that the alter ego has "control" of the entity's finances, policy, and business practices with respect to the transaction at issue. Id. at 188. The creditor must also show a "breach of duty--that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights" that caused the injury to the plaintiff. Id. at 188-89. In addition, "the corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors. Inadequate capitalization is circumstantial evidence of an improper purpose or reckless disregard for the rights of others." Id. at 189 (citations omitted).

Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. Mid-Missouri Tel. Co. v. Alma Tel. Co., 18 S.W.3d 578, 582 (Mo. Ct. App. 2000). Missouri courts will "pierce the corporate veil" and hold a defendant liable for the torts of another corporation under the "instrumentality" or "alter ego" rule if the plaintiff can establish:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

5

Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 306 (8th Cir. 1992); see also Mobius Mgmt., 175 S.W.3d at 189. This standard is almost identical to the standard applied in ERISA cases. See Greater Kansas City Laborers, 104 F.3d at 1055.

In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, courts look to a number of factors, including the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations. See Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., 2002 WL 1492103, at *6 (W.D. Mo. Mar. 11, 2002); see also H.H. Robertson Co. v. V.S. DiCarlo General Contractors, 789 F. Supp. 998, 1000 (E.D. Mo. 1992); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 774 (Mo. Ct. App. 1994).

Plaintiffs have established the necessary prerequisites to the issuance of a creditor's bill, as they have a judgment against Kraft, they issued execution against its assets, and the garnishment was returned with responses of no assets and a closed account.

Plaintiffs contend the key occurrence for the establishment of liability in this case is the formation of M.K. Contracting, L.L.C. after Kraft went out of business but before it satisfied its debt to plaintiffs. The Court finds, however, that plaintiffs have failed to offer substantial evidence to establish any of the three requirements for piercing the corporate veil under Missouri law, or to establish that M.K. Contracting, L.L.C. is the alter ego of Kraft under the LMRA or ERISA.

First, with respect to the issue of control, the relevant factors indicate that Kraft does not control M.K. Contracting, L.L.C. Significantly, the ownership of defendant Kraft is completely different than that of its alleged alter ego, M.K. Contracting, L.L.C. There is no evidence that Marvin Kraft, the sole owner of Kraft, has any role in M.K. Contracting, L.L.C., as an owner, officer

or employee. The owners of M.K. Contracting, L.L.C., Matthew and Michael Kraft, were officers and employees of Kraft, but have no ownership interest in Kraft.

M.K. Contracting, L.L.C. hired two former employees of Kraft and does similar structural concrete work, including for two former customers of Kraft. This evidence of some overlap between the two companies is outweighed, however, by the fact of separate ownership and management discussed above. In addition, the evidence is that M.K. Contracting, L.L.C. uses a different bank for its corporate bank account than did Kraft, and has a separate physical location from Kraft. The undisputed evidence also shows that M.K. Contracting, L.L.C. did not obtain any equipment or assets from Kraft, as Kraft's equipment and assets are still in Kraft's possession, encumbered by liens and security interests. There is also no evidence that M.K. Contracting, L.L.C. obtained any contracts from Kraft. Thus, there is no evidence of subterfuge, or hiding or transfer of assets.

There is no evidence in the record to show that Kraft has any control over, much less dominates, M.K. Contracting, L.L.C. with respect to finances, policy or business practices, such that M.K. Contracting, L.L.C. has "no separate mind, will, or existence of its own. See Mobius Mgmt., 175 S.W.3d at 188. There is also no evidence that Kraft rendered property or services to M.K. Contracting, L.L.C. as an empty-shell corporation or that Kraft or Marvin Kraft received and benefitted from such property or services. The facts instead tend to show that M.K. Contracting, L.L.C. and Kraft are separate corporate entities, and that their corporate forms should be respected as such.

With respect to the second factor for piercing the corporate veil, plaintiffs cannot establish that Kraft used its control of M.K. Contracting, L.L.C. to breach a duty owed to them, because they have not shown that Kraft controls M.K. Contracting, L.L.C. Plaintiffs attempt to show a breach of duty by citing Matthew Kraft's testimony concerning why he started M.K. Contracting, L.L.C.,

7

but this testimony does not establish a breach of duty. Plaintiffs have cited no substantive legal authority for the proposition that mere officers of a debtor company, who have no ownership interest, have personal liability or responsibility for the company's debts and cannot start a similar business after the first company's failure. Plaintiffs do cite case law authorizing the issuance of creditor's bills in cases involving fraudulent transfers, and where the original debtor exercised complete control over the alter ego and was unable to pay its creditors due to fraud. Pls.' Mem. Supp. at 4-5. Plaintiffs have not established any facts, however, to bring this case within that legal authority. Finally, because there is no evidence of control or breach of duty, plaintiffs cannot show that the formation of M.K. Contracting L.L.C. proximately caused them any injury or loss.

For the same reasons, plaintiffs fail to show that the management, supervision, business purpose, operations, customers, equipment, facilities and employees of M.K. Contracting, L.L.C. and Kraft are substantially identical, as required by the LMRA's alter ego test; or that M.K. Contracting, L.L.C. and Kraft exist independently in form only, and are used as a subterfuge to defraud, to justify a wrong, or to mislead or discourage pursuit of legal action, as required by ERISA's alter ego test.

**Conclusion**

For the foregoing reasons, plaintiffs have not shown that M.K. Contracting, L.L.C. is the alter ego of defendant Kraft & Associates Co. Plaintiffs are therefore not entitled to a creditor's bill in equity against M.K. Contracting, L.L.C. in order to satisfy their judgment against Kraft & Associates Co.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil is **DENIED**.  [Doc. 21]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum and Order to M.K. Contracting, L.L.C., at 15 Larkin Lane, St. Louis, Missouri 63128.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of September, 2011.